**BETH ABRAHAM HOSPITAL, Plaintiff,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant.**

**No. 86 Civ. 8240 (RWS).**

United States District Court, S.D. New York.

March 28, 1988.

As Amended May 4, 1988.

Summit Rovins & Feldesman, New York City (Ira Greenberg, of counsel), Hogan & Hartson, Washington, D.C. (William A. Bradford, Jr., Robert F. Leibenluft, Sue A. Kaplan, Jeffrey G. Schneider, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Sapna V. Raj, Sp. Asst. U.S. Atty., of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Beth Abraham Hospital ("Beth Abraham") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P, in its action seeking review of a decision of the Secretary of the Department of Health and Human Services (the "Secretary") that adopted the decision of the Provider Reimbursement Review Board ("PRRB") denying Beth Abraham reimbursement for certain costs it incurred in its 1980–82 cost years. The Secretary has cross-moved for judgment on the pleadings. For the rea-

sons set forth below, the case is remanded to the Secretary for further proceedings consistent with this decision.

*Prior Proceedings*

Beth Abraham filed its challenge to the Secretary's decision in this court on October 27, 1986. The parties waived discovery and submitted the administrative record, which consists of 2330 pages of materials. Beth Abraham filed its motion on June 27, 1987, and the Secretary cross-moved on September 18, 1987. Oral argument was heard on November 20, 1987.

*Facts and Procedures*

Beth Abraham is a not-for-profit skilled nursing facility ("SNF") located in the Bronx, New York. It participates as a provider of services in the Medicare program. Beth Abraham specializes in treatment of extremely ill geriatric patients who otherwise would be cared for in more costly acute care hospital settings. Based on this specialization, it regards itself as an atypical provider and seeks reimbursement for exceptional costs.

The Health Care Financing Administration ("HCFA") is the agency designated by the Department of Health and Human Services ("HHS") to establish ceilings on the level of reimbursement for routine inpatient care provided in SNFs, or "cost limits." The object of these limits is adherence to the statutory mandate that only "reasonable costs" be reimbursed. 42 U.S. C. § 1395x(v)(1)(A). However, reimbursement may be obtained for exceptional costs if the services provided are atypical. 42 C.F.R. § 413.30(f).

To receive Medicare reimbursement, each participating provider must file a report of its costs with a Medicare intermediary, a private organization that contracts with HCFA to administer the Medicare program in a particular geographic area. The intermediary in this case was Blue Cross Blue Shield of Greater New York ("Blue Cross"). The report must include a breakdown of costs into "cost centers," that consist of categories of costs such as housekeeping, dietary, etc. In analyzing costs, the intermediary applies a single total routine cost limit against the provider's

aggregate routine costs per diem. The procedure for obtaining an exception, at least at the intermediary level, consists of having the intermediary review the provider's total routine costs and compare them with the total routine costs of similar providers in the same geographical area. This process is known as a "peer group analysis." The intermediary will then determine whether costs that exceed the peer group are reasonable and necessary.

In February 1981, Beth Abraham requested an exception from the cost limits applicable to its 1980 financial year. Beth Abraham's costs were $87.25 per diem as compared with the cost limit for 1980 of $58.17, a discrepancy of $29.08. Blue Cross thus conducted a peer group analysis and determined that although Beth Abraham's costs surpassed the peer group's average per diem cost, an exception was warranted. A.R. at 1149–51. It made this determination based on the high intensity services Beth Abraham provides its patients. A.R. at 1150.

HCFA reviewed Blue Cross' determination and on October 7, 1981 notified Blue Cross that it would grant a partial interim exception for atypical nursing care in the amount of $12.30 per diem, subject to a final audit. It, however, required that Blue Cross determine the reasonableness of Beth Abraham's costs in the areas of Administrative and General, Maintenance and Repairs, Housekeeping, and Central Supply. A.R. at 1153–55.

Blue Cross conducted a second peer group analysis and found that Beth Abraham's costs in three of the four groups were reasonable. A.R. at 1166–67. It requested further information on Central Supply, which was later provided. On November 20, 1981, Blue Cross notified Beth Abraham that HCFA had authorized reimbursement in the amount of $12.30 less $1.51 for higher Central Supply costs.

Over the course of the succeeding year, Beth Abraham endeavored to obtain full relief through meetings, discussions, and correspondence with both Blue Cross and

HCFA. *See, e.g.,* A.R. at 1169–99.[1] However, HCFA continually denied relief due to Beth Abraham's failure to identify separately its excess costs. According to Beth Abraham, its efforts to justify its costs during this period were frustrated by HCFA's failure to provide a breakdown of the cost limit by cost center so that Beth Abraham could explain its costs with particularity. HCFA suggested that Beth Abraham appeal directly to the PRRB.

In November 1984, Beth Abraham requested a hearing before the PRRB to contest HCFA's treatment of its application for reimbursement. This request was consolidated with similar requests filed for the 1981 and 1982 financial years, and a hearing on all three years was held on April 3 and 4, 1986.

At the hearing, Beth Abraham presented witnesses who testified as to the atypicality of the services provided by Beth Abraham and as to the reasonableness and necessity of the expenditures. Nonetheless, because no witness was able to specifically designate the SNF's exceptional costs—that is, in what way Beth Abraham's costs specifically exceeded those of other members of its peer group in each cost center—the PRRB upheld HCFA's decision not to reimburse Beth Abraham fully. A.R. 8–12.

On October 2, 1986, the Secretary, through the HCFA Deputy Administrator, declined to review the PRRB's decision. Thus, Beth Abraham's unreimbursed costs amount to $37,235 for 1980, $74,047 for 1981, and $65,329 for 1982.

*The Standard for Review*

■ The Social Security Act provides for judicial review in the district court for decisions of the PRRB that have been reversed, affirmed, or modified by the Secretary. 42 U.S.C. § 1395oo. Such cases are to be decided pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Under the APA, a reviewing court can:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

---

1. Beth Abraham has been granted additional relief such that by June 1984, its covered costs amounted to $18.96 per diem.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706. In this case, based on the lack of standards provided by the agency, the action taken by the Secretary is arbitrary and capricious and not in accordance with the statutory scheme.

*The Failure to Comply with the Statutory Scheme*

Under the Social Security Act, the federal government must reimburse eligible providers for the "reasonable cost" of the services provided. 42 U.S.C. § 1395f. Reasonable costs are defined as:

the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, *and shall be determined in accordance with regulations establishing* the method or methods to be used, and *the items to be included,* in determining such costs for various types or classes of institutions, agencies and services. . . . Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates

of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations shall (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) *provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.*

42 U.S.C. § 1395x(v)(1)(A) (emphasis added).

The Secretary has established limits on reasonable costs. 42 C.F.R. § 413.30. However, under 42 C.F.R. § 413.30(f), the limits so established may be adjusted upward under specific circumstances, for example, if the provider furnishes atypical services and thus has atypical costs. *Id.* at § 413.30(f)(1). In order to get an adjustment, the costs must be "reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary."

Here, the Secretary's primary reason for denying Beth Abraham a full exception is the SNF's failure to separately identify its costs—that is, break down its specific extraordinary costs in each cost center. However, Beth Abraham has expressed no unwillingness to provide the Secretary with such a breakdown. It only protests the lack of guidelines available to it so that it may discern which costs are atypical when compared with costs of similarly situated providers.

The parties provide as an example Beth Abraham's excess wheelchair costs. In or-

der to show its atypical need, Beth Abraham provided evidence displaying the greater ambulatory needs of its patients when compared with other providers. *See* A.R. 741, 746. It claims, however, that it was required to show not only the extent to which its need for wheelchairs is greater but the extent to which its costs for wheelchairs are greater. The amount other providers have spent on wheelchairs, however, is information that the agency has failed to make available.

The Secretary, in his sur-reply memorandum of law, denies that Beth Abraham must compare its costs for wheelchairs, claiming that the SNF need only show its excess need. This assertion does not fully square with the PRRB decision. The memorandum states:

> [P]laintiff is not required to provide date showing the extent to which its *costs* for wheelchairs is [sic] greater than at other facilities. However, plaintiff must show the amount attributable to wheelchair costs and show why its *need* for wheelchairs exceeds that of other providers. Again, a provider is required to show the uniqueness of its services by comparing them with the services provided by other facilities. It is not required to compare its costs with the costs incurred by other providers.

Def. Sur–Reply Memo. at 7 (emphasis in original). However, the PRRB, in its decision states:

> Moreover, for an exception for atypical services, 42 C.f.r. 405.460(f)(1) specifies that the Provider must show:
>
> > "(1) The actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified;
>
> .    .    .    .    .
>
> The Board finds that, although the Provider identified areas where it claimed its costs were atypical, it did not meet the burden-of-proof requirements of the regulations set forth above whether compared to other New York providers or those in other areas.

A.R. at 11. The PRRB evidently requires the provider to compare its cost for specific items with the cost of the peer group so as to be able to identify what is atypical or what exceeds the limit. That is, only if the provider knows that the peer group spent $X on wheelchairs can it know that the $X+ it spent is an atypical cost. Moreover, based on the Secretary's own papers in this action it is plain that Beth Abraham did describe its excess need for wheelchairs based on the ambulatory needs of its patients.

█ This analysis holds true for all cost centers. First, a provider must know what items fall into the peer group cost center. Next, it must know the peer group cost for each item. A determination of atypicality begs the question: Atypical when compared to what? This information has been unavailable to Beth Abraham.

A similar case was recently decided in the Eastern District of New York, and the reasoning applied in that case is adopted here. *JIGC Nursing Home Co. v. Bowen,* 667 F.Supp 949 (E.D.N.Y.1987). There, Judge Nickerson aptly described any attempt at reviewing the Secretary's decision on JIGC's exception requests as "akin to wrestling with water." *Id.* at 961. He further stated:

> If plaintiff is to have a fair opportunity to present its exception requests pursuant to the statute and regulations, and if the court is to have a determination it can review, the Secretary must make clear the precise standard to which plaintiff must compare itself. The identity and composition of the peer groups that establish that standard must be revealed, and plaintiff must have the opportunity to determine the precise services and activities in which the members of the groups engage.

*Id.* at 962.

The same flaw in the Secretary's handling of exception requests is applicable here. Although the statutory scheme mandates that reasonable costs be determined in accordance with regulations detailing the items included in determining such costs as indicated above, no such guidelines have been provided. The items that make up

each cost center are not listed, nor are the average peer group costs for each item.

In setting forth the scope of review under the arbitrary and capricious standard, the Supreme Court has stated that although a court should not substitute its judgment for that of the agency:

> The agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, [83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.* [419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) ].

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

In this case, the Secretary has not articulated a satisfactory explanation for his decision for he has failed to provide the standards upon which his decision is based. Moreover, the court has no way of discerning whether the decision was based on consideration of the relevant factors because no factors have been set forth. For these reasons, the case must be remanded to the Secretary so that he may make a reasoned decision based on the statutory scheme. Such a determination will involve articulating the make up of each cost center so that a claimant is informed as to the basis for a decision rendered and so that a reviewing court has a standard upon which to base its review.

*Conclusion*

This case is remanded to the Secretary for further proceedings consistent with this opinion.

IT IS SO ORDERED.